# MEMORANDA

# CASES NOT REPORTED IN FULL.

---

## NORMAN HUBBARD AND GEORGE WHITTAKER, PLAIN-TIFFS, *v.* JAMES O'BRIEN, SHERIFF OF THE CITY AND COUNTY OF NEW YORK, DEFENDANT.

*Acceptance — what sufficient to vest title — Goods manufactured to order — payment of price after seeing them, and direction to ship — transfers title.*

EXCEPTIONS ordered to be heard, in the first instance, at General Term, on a judgment directed for the defendant at the Circuit.

The suit was brought by the plaintiffs to recover possession of an iron rod seized by the defendant under an attachment against one George E. Reynolds, of Bristol, Pennsylvania. The plaintiffs are machinists; and, having to build a large engine, entered into an agreement with Reynolds, whereby he was to manufacture for them certain heavy parts of the engine, including the rod seized. Some of the articles were delivered; and on the 16th day of December, 1868, before the delivery of the rod seized, Reynolds came to the plaintiffs, stated that the rod was finished, and was at the shop of Neafie & Levy, in Philadelphia; that said firm had done the finishing of the rod, and would not deliver it till their claim upon it for their work was paid, and that he wanted the money. To this the plaintiffs finally assented, giving Reynolds their note for the whole price of the rod, which was paid by them February 27, 1869, and Reynolds at the same time giving the plaintiffs the bill for the rod, and giving them a receipt for the same in their receipt book. The rod still not coming forward, the plaintiffs went to Neafie & Levy, at Philadelphia, and saw the rod there finished and ready for delivery. But Neafie & Levy refused to deliver the rod to plaintiffs, claiming that Reynolds had not paid their lien upon it. The plaintiffs, to obtain possession of the rod, paid Neafie & Levy their claim, and

the latter, in accordance with plaintiffs' instruction, shipped the rod to plaintiffs, at New York, giving plaintiffs the bill of lading for the same. On the arrival of the rod at pier No. 2, New York, the same was seized by the sheriff under an attachment against Reynolds. The court directed a verdict for the defendant, on the ground that the title to the rod had never passed to the plaintiffs. The plaintiffs requested the court to direct a verdict for the plaintiffs, which the court refused; and also asked to go to the jury on the question, whether the transactions of December sixteenth were a sale, which was also refused. To the court's direction and its refusals plaintiffs excepted.

The court at General Term say : " It appears from this statement that the rod was seen by the plaintiffs in Philadelphia, and by their direction sent to them after the payment by them of the lien of Neafie & Levy. This was the acceptance of the rod, and an exercise of ownership over it. They had already given their note for the price of it to Reynolds under his promise to pay Neafie & Levy and to send it on to them. Whatever right they might have had to reject it was waived when they paid the lien of these workmen, and directed it to be shipped to them. When an article is manufactured, it is true that the title does not vest in the person for whom it is made until it is finished and delivered, or ready for delivery, and approved by him. (*Andrews* v. *Durant*, 11 N. Y., 35, per Denio, J. ; *Williams* v. *Jackman*, 16 Gray [82 Mass.], 517.)

If the title to the article vested absolutely in the person ordering it, it would necessarily follow that he must accept it, and he would thus be deprived of the right to say that it was not completed, or not made in accordance with the contract relating to it, and also of the right of refusing, therefore, to accept it. If, however, the article being finished, he accept it and pay for it, and direct its transportation to him, there can be no doubt that the title passes at once. (Cases *supra*.) The doctrine of acceptance and approval is chiefly necessary for the protection of persons ordering the manufactured article.

The presumption must be that the manufactnrer is content to deliver, and when the minds meet by completion and acceptance or approval, and the price is paid in any manner agreed upon, the title passes and the property is at the risk of the vendee, unless there be

something special intervening to prevent the application of the rule as to risk. The risk follows the title. It is not thought requisite to enter into any elaborate discussion of this subject. The cases *supra*, and those hereafter cited, make the conclusion on which this opinion is based unassailable. (*Terry* v. *Wheeler*, 25 N. Y., 522; *Russell* v. *Carrington*, 42 id., 119; *Cross* v. *O'Donnell*, 44 id., 661; *Brewer* v. *Salisbury*, 9 Barb., 512.) The position of the defendant rests on the assumption that the agreement was not ended or completed, or the property vested either because the rod was not finished or accepted or delivered; and if the facts warranted this attitude, it might be troublesome, if not impossible, to disturb the judgment. In this he is in error.

The rod was finished. It was accepted, paid for, and delivered. The delivery to the carrier, in accordance with the plaintiffs' instructions, was a delivery to them. They had the right to direct the transportation of the rod, because they had paid for it, and by discharging the lien of Neafie & Levy they had removed the only obstacle to their complete possession and ownership. This case differs, therefore, widely from that class of cases which hold that goods ordered to be made, do not become the property of the person directing their manufacture until they are completed and accepted and delivered. For these reasons there should be a new trial.

Ordered accordingly, with costs to abide event."

 *E. M. Cullen*, for the plaintiffs. *A. J. Vanderpoel*, for the defendant.

Opinion by BRADY, J.; DAVIS, P. J., and DANIELS, J., concurred.

New trial ordered, costs to abide event.